

IN THE
TENTH COURT OF APPEALS

No. 10-19-00127-CR

CRYSTAL THOMPSON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 77th District Court
Freestone County, Texas
Trial Court No. 18-102-CR

MEMORANDUM  OPINION

The jury convicted Crystal Thompson of the offense of aggravated robbery.  The

trial court found the enhancement paragraph to be true and assessed punishment at

thirty-five years confinement.  We affirm.

## SUFFICIENCY OF THE EVIDENCE

In the first issue, Thompson argues that the evidence is insufficient to support her conviction. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as

> defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.; see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Crystal Thompson was working the night shift at McDonald's on January 10, 2018. Thompson and Akeevah Jackson, the night manager, were the only two employees in the store after 11:00 p.m. Supervising manager, Mike Gose, testified that store policy required the lobby doors to be locked at 11:00 p.m. Only drive through service was available until the store reopened the following morning. Gose stated that all doors remain shut throughout the night and that no one is allowed to go in or out until 6:00 a.m. when the morning managers arrive and unlock the lobby doors.

The security video from McDonald's shows Thompson unlocking a door and propping it open just after midnight on January 10, 2018. At approximately 3:15 a.m., Jackson was in the office counting the money from the day. Thompson came by the office and told Jackson she was going to use the restroom. Moments later the security video shows Thompson making a phone call outside of the restroom. Robert Thompson entered the store at approximately 3:25 a.m. and went into the office where Jackson was counting the money. Robert hit Jackson in the head with a pistol and told her to get on

the ground. Thompson came into the office moments later. Thompson got on the ground, and the security video appears to show Robert kick her before leaving the office. Robert left the McDonald's through the back door setting off an alarm. Thompson followed Robert to the back door and closed the back door.

Jackson called 9-1-1 to report the robbery. Officer Rodney Price, with the Fairfield Police Department, responded to the robbery call. Officer Price saw a person matching the description of the suspect running in the area. After a chase, Officer Price apprehended the suspect and detained him. Officers found the stolen money and the pistol when searching the area. The pistol recovered was a BB pistol that had the weight and appearance of a firearm.

After Robert was detained, officers asked both Jackson and Thompson if they knew him. Jackson said that she did not, but Thompson did not respond. Officers later learned that Robert and Thompson are married. Gose came to the store in response to the robbery. He reviewed the security video with law enforcement. Thompson was placed under arrest.

Thompson was charged as a party to aggravated robbery. The law of parties authorizes conviction for the collective conduct of two or more people. *Johnson v. State*, 560 S.W.3d 224, 229 (Tex. Crim. App. 2018). "A person is criminally responsible as a party to an offense if the offense committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01 (a) (West

2011). Under Section 7.02(a)(2) a person is criminally responsible for the conduct of another if he intends commission of the offense and does something to help the other person to commit it. *Johnson v. State*, 560 S.W.3d at 230.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

TEX. PENAL CODE ANN. § 7.02 (a) (2) (West 2011).

Thompson contends that the State had to prove that she knew Robert would use or exhibit the BB pistol at the time she acted to assist him in the commission of the offense. Thompson specifically argues that the evidence is insufficient to show that she knew Robert was going to use or exhibit a deadly weapon.

A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the aggravating element. *Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Wyatt v. State*, 367 S.W.3d 337, 341 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd, untimely filed); *Woods v. State*, No. 05-18-00444-CR, Tex. App. 2019 LEXIS 6271 * 31 (Tex. App. — Dallas, July 23, 2019, pet. ref'd). For a party to an offense to be liable for the use or exhibition of a deadly weapon as an element of aggravated robbery, there must be evidence that the defendant not only participated in the robbery before, while, or after a deadly weapon was displayed, but did so while being aware that the deadly weapon would be, was being, or had been used or exhibited during the offense. *Woods v. State* at *31; *Wyatt*

*v. State*, 367 S.W. 3d at 341-42. Our sufficiency review is not limited to evidence that the defendant knew in advance the deadly weapon would be used or exhibited during the robbery. *Woods v. State* at *31.

The record is clear, and Thompson does not dispute, that Robert used or exhibited the BB pistol during the commission of the offense. Thompson argues the evidence does not show that she knew Robert would use or exhibit the BB pistol. However, the record shows that Thompson came into the office where Robert struck Jackson in the head with the BB pistol. Thompson encountered Robert in the office and told officers he pushed her to the ground and kicked her. Thompson also followed Robert as he left the McDonald's. The evidence supports a finding that Thompson participated in the robbery while the weapon was displayed and was aware that the BB pistol was being or had been used or exhibited during the robbery. We find that the evidence is sufficient to support Thompsons's conviction for aggravated robbery. We overrule the first issue.

## JURY CHARGE

In the second issue, Thompson argues that the trial court failed to properly instruct the jury regarding the offense charged. In analyzing a claim of jury charge error, we must first determine if error exists. *See Almanza v. State*, 686 S.W.2d 157, 173-74 (Tex. Crim. App. 1985); *Riggs v. State*, 482 S.W.3d. 270, 273 (Tex. App. — Waco 2015, pet. ref'd). If it does not, our inquiry ends. *Riggs v. State*, 482 S.W.3d. at 273. If, however, we find

error in the charge, we next consider whether an objection to the charge was made and analyze the error for harm. *Id.*

If an error was properly preserved by objection, reversal will be necessary if there is some harm to the accused from the error. *Almanza v. State*, 686 S.W.2d at 171. Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the charge error causes egregious harm, meaning the appellant did not receive a fair and impartial trial. *Id.* Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Riggs v. State*, 482 S.W.3d. at 273. However, the Court of Criminal Appeals has suggested that it is unlikely that charge error in the abstract portion of the charge which is not present in the application paragraph will be egregiously harmful. *Id.*

For both preserved and unpreserved charging error, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. To obtain a reversal for jury-charge error, an appellant must have suffered actual harm, not merely theoretical harm. *Id.*

Thompson specifically argues that the jury charge failed to properly tailor the culpable mental states to the elements they applied to and that those errors were exacerbated because the trial court failed to instruct the jurors that they must find she

knew Robert would use or exhibit the BB pistol before they could convict her as a party to aggravated robbery.

There are three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). An offense may contain any one or more of these "conduct elements" which alone or in combination form the overall behavior which the Legislature criminalized, and it is these essential "conduct elements" to which a culpable mental state must apply. *Id.* Thus, the culpable mental state definitions in the charge must be tailored to the conduct elements of the charged offense. *Cook v. State*, 884 S.W.2d at 487. Where the charged offense does not include a particular conduct element, it is error for the court's charge to contain a definition of the culpable mental state for that conduct element in the abstract portion of the charge. *Riggs v. State*, 482 S.W.3d. at 274. A trial court does not err, however, in defining the culpable mental states for nature, result, and circumstances surrounding conduct when all three of the conduct elements are contained within the offense. *See Patrick*, 906 S.W.2d 481,492 (Tex. Crim. App. 1995); *Gutierrez v. State*, 446 S.W.3d 36, 40 (Tex. App. —Waco 2014, pet. ref'd).

The court's charge in this case defined "intentionally" and "knowingly" according to Texas Penal Code Section 6.03. Those definitions are as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE ANN. § 6.03(a) (b) (West 2011).

Aggravated robbery, as charged in this case, is committed when, in the course of committing theft, a person threatens or places another in fear of bodily injury or death and the person uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (West 2019). The element "in the course of committing theft" refers to the circumstances surrounding the conduct, rather than the result. *Gutierrez v. State*, 446 S.W.3d at 40. Because the form of robbery alleged is "aggravated" by the use of a deadly weapon, that element refers to the nature of conduct rather than the result of conduct because a weapon is "deadly" if it is "capable" of causing serious bodily injury in the manner of its use, without regard to whether the actual result is the infliction of serious bodily injury. *Id*.

Because the charge used language of all three conduct elements in its definitions of the culpable mental states and all three conduct elements are present in this case, the trial court did not err in charging the jury. *See Gutierrez v. State*, 446 S.W.3d at 40. Moreover, because Thompson did not object to the charge, a reversal will be granted only if the charge error causes egregious harm. Where the application paragraph correctly

instructs the jury, an error in the abstract instruction is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999).

Thompson also argues that the charge failed to instruct that she must have known Robert would use or exhibit a deadly weapon. The trial court instructed the jury:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that on or about the 10th day of January, 2018, in Freestone County, Texas, Crystal Thompson did then and there while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Akeevah Jackson in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, namely BB pistol; or if you find from the evidence beyond a reasonable doubt that on or about the 10th day of January, 2018, in Freestone County, Texas, Robert Thompson did then and there while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally or knowingly threaten or place Akeevah Jackson in fear of imminent bodily injury or death, and Robert Thompson did then and there use or exhibit a deadly weapon, namely BB pistol and that the defendant, Crystal Thompson, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid Robert Thompson to commit the offense, if she did, then you will find the defendant "Guilty" of the offense of Aggravated Robbery as charged in the indictment.

The jury was authorized to convict Thompson of aggravated robbery with a deadly weapon only if it found beyond a reasonable doubt that she acted with intent to promote or assist Robert Thompson in the commission of the offense by encouraging, aiding, or attempting to aid him in the robbery of Jackson with a deadly weapon. No greater specificity in the charge was required. *Woods v. State*, No. 05-18-00444-CR, Tex. App. 2019

LEXIS 6271 * 13. (*citing Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012)).  We

overrule the second issue.

CONCLUSION

We affirm the trial court's judgment.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Neill
Affirmed
Opinion delivered and filed August 19, 2020
Do not publish
[CRPM]

